[Cite as *Fulton RR. Co., Ltd. v. Cincinnati*, 2017-Ohio-9320.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| FULTON RAILROAD CO. LTD, | : | APPEAL NO. C-160901 |
| | | TRIAL NO. A-1406585 |
| THE SAWYER PLACE COMPANY, | : | |
| | | *O P I N I O N.* |
| and | : | |
| CINCINNATI BARGE & RAIL TERMINAL, LLC., | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| CITY OF CINCINNATI, | : | |
| CITY COUNCIL OF THE CITY OF CINCINNATI, | : | |
| | : | |
| and | : | |
| | : | |
| CITY PLANNING COMMISSION OF THE CITY OF CINCINNATI, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 29, 2017

*Barrett & Weber, C. Francis Barrett* and *Joshua L. Goode*, for Plaintiffs-Appellants,

*Paula Boggs Muething,* City Solicitor, *Marion E. Haynes,* Assistant City Solicitor, and *Emily E. Woerner*, Assistant City Solicitor, for Defendants-Appellees.

**MILLER, Judge**.

{¶1} We affirm the trial court's reluctant determination that the residential zoning designation placed on riverfront land near downtown Cincinnati, presently and historically used for industrial purposes, is constitutional. The city is empowered to zone property in an effort to change the character of a neighborhood. Appellants did not meet their high burden of establishing that the zoning applied to their property is unconstitutional. Nor did they establish a total regulatory taking, i.e., that the zoning deprived the owner of all economically viable uses of the land, assuming such a claim was properly pled.

### Facts

{¶2} Fulton Railroad Company ("Fulton"), Sawyer Place Company ("Sawyer"), and Cincinnati Barge & Rail Terminal, LLC, ("Cincinnati Barge") claim that the zoning of the property at issue as "Riverfront Residential/Recreational" ("RF-R") is unconstitutional. The subject property, owned by Fulton and Sawyer, consists of 26-plus acres along the Ohio River, upriver from downtown Cincinnati. It abuts the Theodore M. Berry International Friendship Park to the west, light industrial property to the east, and residential property to the northwest. Approximately 18 of these acres are out of the floodplain—making the property somewhat unique.

{¶3} The property, used for commercial and industrial purposes for at least 200 years, is currently used by Cincinnati Barge as a barge terminal. Materials are offloaded from barges, stored in yards, and loaded onto trucks and railcars for further transport. For decades, the city has wanted the property to be used for high-end residential purposes, and has zoned it accordingly. Despite this zoning, the code allows Cincinnati Barge to continue its operations as a legal, nonconforming use.

2

{¶4}   In 2007, the city rezoned the property to Planned Development 46 ("PD-46") via Cincinnati Ordinance 39-2007.   Before this change, the property, which consists of multiple parcels, had a unified zoning designation of "Planned Development 17" ("PD-17").   Prior to PD-17 zoning, the parcels were in two zoning categories, "R-5(T)" and "RF-2."   The PD-46 designation allows development for office, hotel, and residential mixed-uses. Among other requirements, a final development plan had to be submitted and approved to keep the PD-46 designation. If a final development plan was not approved, Cincinnati Ordinance 39-2007 provided that the property would "revert" to RF-R, a zoning classification it never previously had.

{¶5}   In 2014, after numerous extensions, the city denied Sawyer's request to modify PD-46 to adopt its present use as the final development plan, and also denied its request for yet another extension to submit a final development plan.  The PD-46 designation terminated. Under Cincinnati Ordinance 39-2007, the property "reverted" to RF-R.

### Procedural Posture

{¶6}   Appellants filed this action seeking a declaration that RF-R zoning is unconstitutional as applied to the subject property.   Appellants contended, in relevant part, that (1) the zoning designation deprived them of economically viable uses;[1] (2) the uses permitted by the RF-R zoning were not "reasonably practical" uses; (3) the RF-R zoning bears no reasonable relationship to the preservation of the public health, safety, morals, or general welfare; and (4) the zoning failed to

---

[1] The parties impliedly dispute, but did not thoroughly brief, whether an unconstitutional taking without just compensation can be properly alleged via a declaratory judgment action where mandamus has not been sought.  Whether this request for a declaration was an effort to assert such a claim, or was merely an argument to support its as-applied challenge to the zoning, is also unclear.  As discussed below, we can resolve this case without resolving this issue, and reserve it for another day.

substantially advance a legitimate government interest. Appellants also moved for a declaration that Cincinnati Ordinance 39-2007 did not authorize RF-R zoning after the expiration of the PD-46 overlay district because the zoning should have "reverted" to what had existed prior to Cincinnati Ordinance 39-2007—namely PD-17, or a combination of R-5(T) and RF-2.

{¶7} The case proceeded to a bench trial, during which numerous experts testified concerning the purpose of the zoning and the economies of developing the property as zoned. Appellants' experts surmised that developing the property for residential purposes in accordance with the RF-R designation was not economically feasible. The city primarily argued that the zoning designation was constitutional because it had a substantial relationship to the city's plan to meet the demand of new residents seeking high-end housing close to downtown Cincinnati and on the Ohio River, and that a high-end residential development was likely to increase property tax revenues. Each side offered experts to rebut the other's experts.

{¶8} In an advisory "letter decision" before it formally entered judgment, the trial court indicated that it was sympathetic to appellants' plight, and went so far as to voice skepticism regarding the legal burden placed upon landowners. The trial court nevertheless recognized that it was constrained to apply the law as it found it, and informed the parties that it intended to rule that the zoning was constitutional. The court directed the city to prepare a proposed entry.

{¶9} The trial court later entered extensive findings of fact and conclusions of law, in which it incorporated its letter-decision, and held that appellants had not met their burden to demonstrate that the zoning regulation was "clearly arbitrary, unreasonable, or without substantial relation to the public health, safety, morals, and general welfare of the community." On this basis alone, the court determined that

4

the zoning regulation was constitutional as applied to the subject property. The court did not directly address appellants' economic-feasibility argument in its conclusions of law, although it made factual findings that appellants had failed to prove that the property could not be developed for a residential use.

{¶10} The trial court also concluded that the RF-R designation was not "revisionary zoning," as appellants had contended, because the "clear intent" of the city's ordinance "was to apply RF-R, Riverfront Residential/Recreational, zoning to the subject property should the Planned Development 46 zoning lapse." The court dismissed appellants' complaint with prejudice, and entered judgment in favor of the city.

## Analysis

{¶11} In appellants' sole assignment of error, they contend that the trial court erred as a matter of law because it failed to apply the proper test for determining the constitutionality of zoning, and that it failed "to follow the required standards" for considering whether the zoning as applied to their property is constitutional. Through artful wording, appellants attempt to shoehorn our review solely into a question of law that we review de novo. However, appellants subdivide their assignment of error into six issues. As the city correctly points out, not all of the issues present questions of law. We will address the standard of review for each issue as they come.

{¶12} ***The judgment was consistent with the findings of fact.*** In the first issue presented for review, appellants argue that the trial court's letter-decision indicates that the court found the zoning to be arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare, and yet failed to enter judgment in appellants' favor.

5

{¶13} Application of the law to the trial court's findings presents a legal question that we review de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995); *Castlebrook Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d 340, 346, 604 N.E.2d 808 (2d Dist.1992). A zoning regulation that is arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare is unconstitutional. *State ex rel. Ridge Club v. Amberley Village*, 1st Dist. Hamilton No. C-070012, 2007-Ohio-6089, ¶ 11. Appellants do not challenge any particular finding of fact. Rather, in support of their argument, appellants point to the trial court's statements regarding its frustration with the state of the law.

{¶14} Appellants are correct that, in its letter-decision, the trial court expressed an unambiguous preference to declare the zoning unconstitutional—if it could do so under the law. What the trial court so eloquently put was, "***The law does not permit me to so find***, but if I could I would find the mere desire to turn this unique property into a use it has not had for 200 years, no matter how often stated, is arbitrary and capricious without investigation as to whether the change is feasible." (Emphasis added.) Rather than being a factual finding in appellant's favor, this is an express statement of judicial restraint. The trial court stated a desire for a different legal standard. The trial court preferred the city be required to conduct an economic-feasibility analysis before rezoning property in a manner that would limit its current use. As the trial court recognized, this isn't the law.

{¶15} The trial court also preferred that the city not be permitted "to explicitly preference one economic group over another to benefit its own treasury." As the trial court correctly recognized, and as discussed more fully under appellants'

third and fourth issues presented for review, these factors do not render a zoning regulation unconstitutional.[2]

{¶16} In its journalized findings of fact, the trial court found,

> RF-R zoning is consistent with the publically-stated plans for the subject property. The reasons for the plans include that the City will benefit from additional high-end housing options in the East End neighborhood, which supports the demand for new residents interested in living near the city center and the Ohio River, and that high-end residential development are [sic] likely to increase property tax revenues generated by the subject property as compared with the property tax revenues generated by the current operations on the subject property. Plaintiffs have not proven that the subject property cannot be developed for a residential use beyond fair debate. There are simply too many things not known at this time.

The court's judgment follows from these findings of fact.

{¶17} Appellants contend that the court's findings require reversal under *Karches v. Cincinnati*, 38 Ohio St.3d 12, 526 N.E.2d 1350 (1988). Interestingly, *Karches* involved property owners who wanted to construct a river barge terminal on the Ohio River underneath the I-275 Combs-Hehl Bridge near Coney Island in

---

[2] The trial court also stated, "I would find it arbitrary and capricious to force a small business out of business without full compensation * * *." However, there was no finding that Cincinnati Barge is being forced out of business at this time. Moreover, appellants elected not to seek a writ of mandamus to force an inverse condemnation proceeding, so compensation was not an available remedy.

Cincinnati's California neighborhood. The Supreme Court reinstated the trial court's judgment that the zoning for the site was unconstitutional because it was cost prohibitive to construct the houses above the floodplain, and the allowed commercial uses had either been tried and failed or were cost prohibitive. *Id.* at 20-22. The trial court in that case also found that the zoning decreased the value of the property. *Id.*

{¶18} While the issues here are strikingly similar, the factual findings are strikingly different. Here, most of the property is out of the floodplain, which arguably reduces development costs vis-à-vis those in *Karches*. Here, a barge terminal is already in place, in use, and is not required to cease operations. The trial court here found, unlike in *Karches,* that appellants failed to prove that residential use was not economically viable. Moreover, the trial court found that residential development here is likely to increase the value of the property and the corresponding real estate taxes paid to the city. *Karches* does not require reversal.

{¶19} Accordingly, appellants' first issue presented for review is not well taken. The judgment is wholly consistent with the factual findings.

{¶20} *The Disjunctive Test.* In their second issue presented for review, appellants argue that the trial court misapplied the law because it considered only one test to determine constitutionality when it should have considered two. Determining what the law is presents a question of law that we review de novo. This issue is less a dispute over what the law is, and more a dispute over whether appellants properly asserted a takings claim.

{¶21} In their complaint, appellants sought a declaration that the zoning was unconstitutional because "The uses permitted of the subject real property . . . are not economically viable uses." If a property has been totally deprived of its economic value through zoning, a total regulatory taking has occurred. *Lucas v. South*

*Carolina Coastal Council*, 505 U.S. 1003, 1027, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). A large portion of the trial focused on the economic viability of the zoning, with experts testifying to the issue on behalf of both sides. The parties tried the issue, and the trial court issued findings thereon. So even if a takings claim was not pled, it was arguably tried by consent of the parties under Civ.R. 15(B), and "shall be treated in all respects as if * * * [it] had been raised in the pleadings." But, to the extent that the takings issue was raised, it was within the context of a declaratory judgment, not in mandamus.

{¶22} The constitutionality of zoning may be challenged via declaratory judgment. *Union Oil Co. of California v. City of Worthington*, 62 Ohio St.2d 263, 267, 405 N.E.2d 277 (1980) ("[I]n a declaratory judgment action, upon finding existing zoning unconstitutional as applied to specific real property, the trial court should give notice to the zoning authority that, within a reasonable time certain, it may, at its option, rezone the property.") Unaddressed by Ohio law is whether a takings claim can be successfully pursued via declaratory judgment where mandamus is not sought. *Compare Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977 (dismissing a mandamus takings claim for lack of standing, but not addressing whether declaratory relief would be appropriate). We decline to resolve this issue today because, as explained below, the zoning ordinance is valid under both tests.

{¶23} Appellants correctly state that, in this appellate district, the legal standard for as-applied zoning challenges is set forth in *Ridge Club*, 1st Dist. Hamilton No. C-070012, 2007-Ohio-6089. There are two separate tests in *Ridge Club*. *Id.* at ¶ 11. One renders an ordinance unconstitutional where "the zoning classification is arbitrary and unreasonable, having no substantial relationship to the

9

health, safety, and welfare of the municipality." *Id.* Second, an unconstitutional uncompensated taking occurs where the zoning "denies the economically viable use of the land * * * ." *Id.* So, a party can challenge the constitutionality of a zoning ordinance on either or both of these grounds. The second ground is applicable only where a taking is alleged.

{¶24} The city contends that there was no error, and argues that the economic-viability test is not good law. At one time, the Ohio Supreme Court treated the two tests as conjunctive—meaning, to prevail, a plaintiff had to establish that the zoning ordinance was unconstitutional under both tests. *See Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 638 N.E.2d 533 (1994). So, even if a zoning designation deprived an owner of all economically viable use of land, the zoning would be upheld if it "advanced a legitimate government interest." *Id.* at syllabus; *see* Meck & Perlman, *Ohio Planning and Zoning Law*, Section 10:7 (2017).

{¶25} Later, the Supreme Court recognized that requiring both prongs be met was inappropriate, and the test became disjunctive. *Goldberg Cos., Inc. v. Richmond Hts. City Council*, 81 Ohio St.3d 207, 213, 690 N.E.2d 510 (1998). As stated by a leading treatise on Ohio zoning law, the Supreme Court in *Goldberg* "abandoned the conjunctive test for the disjunctive test. From this point on, the rule in Ohio is that a zoning ordinance can be overturned by a court if it fails to substantially advance legitimate state interests or deprives a landowner of economically viable use of property." Meck & Perlman at Section 10:8. The city argues that *Goldberg* did not adopt a disjunctive test, but instead abandoned the economic-viability test altogether. The landowner there did not assert an economic-viability argument—i.e., a taking, so the test was not relevant to that case. The

Supreme Court explained as much in *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 63, 765 N.E.2d 345 (2002) ("*Shemo II*").

{¶26} Completely abandoning the economic-viability test would run afoul of the United States Supreme Court Fifth Amendment precedent. A state regulation that deprives land of all economically beneficial use constitutes a taking, per se. *Lucas*, 505 U.S. at 1027, 112 S.Ct. 2886, 120 L.E.2d 798, followed by *Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 538, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005). A government that undertakes a total regulatory taking must either pay just compensation or "the State may elect to rescind its regulation and thereby avoid having to pay compensation for a permanent deprivation." *Lucas* at fn. 17. Appellants here sought rescission of the RF-R zoning designation via declaratory judgment. We reserve for another day whether this is an appropriate manner to bring a takings claim.

{¶27} ***The RF-R zoning is neither arbitrary nor unreasonable.*** In their fourth issue, appellants contend that the trial court should have found that the zoning ordinance is arbitrary and unreasonable, having no substantial relationship to the health, safety, and welfare of the municipality. *See Ridge Club*, 1st Dist. Hamilton No. C-070012, 2007-Ohio-6089, at ¶ 11. We review this argument to determine if the court's judgment was against the manifest weight of the evidence. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In support of their argument, appellants again point to statements that the trial court made in its letter-decision expressing frustration at the state of the law. The trial court's factual findings are different than appellants contend.

{¶28} Here, the trial court found:

11

RF-R zoning is consistent with the publicly-stated plans for the subject property. The reasons for the plans include that the City will benefit from additional high end housing options in the East End neighborhood, which supports the demand [of] new residents interested in living near the city center and the Ohio River, and that high end residential development are [sic] likely to increase property tax revenues generated by the subject property as compared with the property tax revenues generated by the current operations on the subject property.

These findings are supported by the record.

{¶29} Zoning with the purpose of growing the tax base and increasing the vibrancy of the riverfront in a neighborhood near the city center is neither arbitrary nor unreasonable. It certainly has a substantial relationship to the welfare of the municipality. *See State ex rel. Phillips Supply Co. v. Cincinnati*, 2012-Ohio-6096, 985 N.E.2d 257, ¶ 30 (1st Dist.) (holding that zoning that promoted economic stability and strong neighborhoods was rationally related to the health, safety, and welfare of the city's citizens). Moreover, the zoning is reasonable because, as discussed, it allows for the continuation, expansion, and substitution of appellants' nonconforming use.

{¶30} *The RF-R zoning is currently economically viable.* In their third issue presented for review, appellants argue that they proved at trial that the RF-R zoning designation denies them all economically viable uses of their property. They essentially argue that the trial court's findings to the contrary are against the

manifest weight of the evidence. We will review this argument without passing on whether it is relevant to the analysis of the constitutionality of the zoning or if an uncompensated taking was properly alleged.

{¶31} For our review, we weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way, thereby creating a manifest miscarriage of justice so that the judgment must be reversed and a new trial ordered. *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 20; *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. In weighing the evidence, we are mindful that every reasonable presumption must be made in favor of the judgment and the findings of fact. *Eastley* at ¶ 21.

{¶32} A landowner does not, of course, have the right to have his land zoned for its most advantageous economic use. *Ridge Club*, 1st Dist. Hamilton No. C-070012, 2007-Ohio-6089, at ¶ 13. The central inquiry in an economic-deprivation analysis—"total regulatory taking" in federal parlance—is whether the zoning ordinance denies an owner of all economically viable use of his land. *Id.* The word "all" is significant. A zoning ordinance is unconstitutional if it " 'restricts the use of the land so as to render it valueless, the permitted uses are not economically feasible, or the regulation permits only uses which are highly improbable or practically impossible under the circumstances * * * .' " *Id.*, quoting *Valley Auto Lease of Chagrin Falls, Inc. v. Auburn Twp. Bd. of Zoning Appeals*, 38 Ohio St.3d 184, 186, 527 N.E.2d 825 (1988). At trial, appellants had the burden to demonstrate that the ordinance at issue is unconstitutional "beyond fair debate." *Ridge Club* at ¶ 10, citing *Cent. Motors Corp. v. Pepper Pike,* 73 Ohio St.3d 581, 583-584, 653 N.E.2d 639

(1995). This is a high standard of proof—the civil equivalent to the criminal "beyond a reasonable doubt" standard. *Id.*

{¶33} Here, the trial court found that appellants did not prove beyond fair debate "that the subject property cannot be developed for a residential use," as permitted by the RF-R zoning designation. This finding is supported by the record.

{¶34} Appellants presented a development plan that they argued showed that the land as zoned was not economically feasible.[3] However, the trial court found the feasibility analysis to be inconclusive. We will expound on a few examples of the evidence that, when every inference is made favorable to the city, demonstrate the trial court did not lose its way.

{¶35} Appellants' experts opined that 13.5 acres of the site would be excavated to a depth of ten feet and refilled—completely removing and replacing 210,000 cubic yards of material at an estimated cost of $10.5 million. The city's expert opined that appellants' expert overestimated both the per unit cost and amount of site preparation work needed. The city's expert countered that only 100,000 cubic yards of excavation and embankment was necessary at a cost of only $650,000. According to the city, total site preparation costs were estimated at only $6 million compared to appellants' estimate of $25 million. It was reasonable for the court to find the city's expert to be more credible, or at the very least that appellants did not meet their burden of establishing the development costs beyond fair debate, which it did when it concluded that "[p]laintiffs have not proven that the subject property cannot be developed for a residential use beyond fair debate. There are simply too many things not known at this time."

---

[3] Although case law discusses economic "viability," the experts tend to prefer the term "feasibility." There appears to be no substantive difference.

{¶36} Moreover, the trial court could have concluded that the "site density"—i.e., the number of housing units—in appellants' plan was too low because it was based upon an overly restrictive reading of the city code. The city's expert observed that the site could accommodate many more residences. Appellants' expert agreed, but indicated that would lower the value of each site.

{¶37} We also note that appellants could not establish that the present zoning is economically unviable because, unlike in *Ridge Club*, there is an economically-viable business on the property. Granted, the uses are non-conforming, but they are specifically permitted to continue. *See* Cincinnati Municipal Code 1447-03. With city approval, the present uses can expand or be replaced by other nonconforming uses. *See* Cincinnati Municipal Code 1447-09 and 1447-11. Of course, what becomes of the property if the present uses cease is a question for another day. The appellants did not prove beyond fair debate that the zoning is not economically viable now.

{¶38} *The term "revert" did not render the zoning unlawful.* In their fifth issue, appellants claim that "reverting" to RF-R zoning after the termination of the PD-46 designation was illegal and invalid. Our review of the legal meaning of the ordinance is de novo. *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8.

{¶39} After seven years and several extensions of the deadline to submit a final development plan under the PD-46 zoning, the City Planning Commission decided not to afford appellants another extension. Cincinnati Ordinance 39-2007, which zoned the property PD-46, provided "That a Final Development Plan shall be approved by the City Planning Commission in accordance with Section 1429-11(C) of

the Cincinnati Municipal Code, or the property will revert to the RF-R, Riverfront Residential/Recreational District."

{¶40} The trial court concluded, "The use of the word 'revert' was unfortunate and inaccurate but if the City had used another word, the same thing would have been accomplished." Appellants now argue that the property could not possibly "revert" to a zoning designation it never had. They do not contend that the reference to RF-R in the ordinance was unintentional or a scrivener's error. Their argument is purely semantical. Appellants contend that the property should have "reverted" to the PD-17 designation it had under the former zoning code before the ordinance at issue changed the zoning to RF-R with a PD-46 designation. Under the former code, the property had two different zoning designations, R-5(T) and RF-2, with a designation entitled Planned Development 17. The R-5(T) and RF-2 designations no longer exist in the city's zoning code. Appellants cite no precedent regarding how the ordinance should be interpreted. Their only citation is to a single aged case that was an ode against "contract zoning." *See Hausmann & Johnson, Inc. v. Berea Bd. Of Bldg. Code Appeals*, 40 Ohio App.2d 432, 320 N.E.2d 685 (8th Dist. 1974).

{¶41} In response, the city relies on *Mishr v. Poland Bd. of Zoning Appeals*, 76 Ohio St.3d 238, 667 N.E.2d 365 (1996), in which a divided Supreme Court ruled that an ordinance repealing a rezoning ordinance implicitly reinstated the prior zoning. The majority found the intent to reinstate the prior zoning to be clear, and concluded that a reading that would render the property unzoned to be absurd. *Id.* at 240. The dissent adopted the reasoning of the court of appeals that "[t]he only way the property in question could have been returned to the designation it had

16

under the 1978 ordinance would have been for the repealing ordinance to contain language sufficient to revive that designation." *Id.* at 240-241.

{¶42} Following *Mishr*, the clear intent of Cincinnati Ordinance 39-2007 was to rezone the property to RF-R if a final development plan was not approved. The ordinance also likely satisfies the concerns of the *Mishr* dissent. RF-R is expressly stated. This specific designation in Cincinnati Ordinance 39-2007 controls over the general provision in the zoning code. *See Springdale v. CSX Ry. Corp.*, 68 Ohio St.3d 371, 376, 627 N.E.2d 534 (1994) (holding that specific statutory provisions prevail over general ones). And there is a reason why the verb "revert" was used. Cincinnati Municipal Code 1429-19(c) states that if a PD District expires "the zoning of the PD District revert [sic] to the zoning district designation in effect immediately before the PD designation." Cincinnati Ordinance 39-2007 used "revert" to align itself with the language of the city code. The best, fairest reading of Cincinnati Ordinance 39-2007 is that it simultaneously rezoned the property PD-46 and changed the underlying zoning to RF-R.

{¶43} ***The sixth issue is moot.*** In their sixth and final issue, appellants contend that "when zoning is unconstitutional as applied * * *, it is the duty of the trial court to determine whether the proposed use of the property is reasonable and proper."

{¶44} As we have already determined that the trial court correctly found the zoning to be constitutional, we have no occasion to visit the final issue raised by appellants and we disregard it as moot.

## Conclusion

{¶45} The assignment of error is overruled. The trial court's well-reasoned judgment that the zoning is constitutional as presently applied to the property in question is affirmed.

Judgment affirmed.

**ZAYAS, P.J.,** and **MYERS, J.,** concur.


Please note:

The court has recorded its own entry on the date of the release of this opinion.