[Cite as *Weitzel v. Cincinnati*, 2016-Ohio-1322.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DAVID WEITZEL, | : | APPEAL NO. C-150415 |
| | | TRIAL NO. A-1402917 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| CITY OF CINCINNATI, | : | |
| and | : | |
| CIVIL SERVICE COMMISSION OF | : | |
| THE CITY OF CINCINNATI, | | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed from is:  Affirmed

Date of Judgment Entry on Appeal:  March 30, 2016

*William M. Gustavson,* for Plaintiff-Appellant,

*Paula Boggs Muething*, City Solicitor*,* and *William C. Hicks, Sr.,* Assistant City Solicitor, for Defendants-Appellees.

Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Judge.**

{¶1}  Plaintiff David Weitzel appeals from the judgment of the Hamilton County Court of Common Pleas affirming the Cincinnati Civil Service Commission's ("Commission") denial of Weitzel's appeal regarding the grading of his 2013 Cincinnati Fire Captain's promotional exam.  Weitzel contended that the use of Z-scoring, and the Z-scoring formula that was used, contradicted the stated terms of the promotional exam and the Commission's rules, and the formula was arbitrary, capricious, and unreasonable when giving effect to seniority points.  For the reasons that follow, we affirm.

## I. Background Facts and Procedure

{¶2}  The city of Cincinnati announced Fire Captain promotional exam 13-00005 in January 2013.  Shortly thereafter, the city informed the candidates that the exam would consist of four parts and specified what percentage each part would be worth in calculating the final exam grade.  The city also announced that a "cut score of 65" on the written exam was necessary to sit for the other three parts, which were administered on a later date.

{¶3}  After all four parts were completed, the exams were graded.  The city posted an eligibility list containing the 51 applicants who passed.  Weitzel ranked 13th on the eligibility list.

{¶4}  At subsequent review sessions, the city provided the examinees a written detailed explanation of the method used to determine the final exam score.  Ultimately, the final overall score was determined by adding the weighted scores of the four parts together with the seniority points.  But the raw scores had been standardized with a statistical measurement called a Z-score as part of the formula

applied for weighting the individual parts before combining them. The Z-score measured a score's relationship to the mean, or average, in a group of scores by considering the mean and the standard deviation, or variability in the candidate's performance, for each exam part. According to the city's explanation, a Z-score of zero indicated an average score, but a positive number indicated a score above the mean and a negative number indicated the opposite.

{¶5} Weitzel filed an appeal to the Commission challenging the use of Z-scoring. He claimed that the use of Z-scoring, instead of simply weighting and combining his raw scores, contradicted the weighting terms announced for the exam, and that the Z-scoring formula diluted the effect of his seniority points. He argued also that the use of Z-scoring violated Civil Service Rule 10, Section 5, which required the scores for each part to be on a "continuous" scale if they were not "discrete," such as "pass/fail," which was also allowed under the rule.

{¶6} Two hearings were held before the Commission. Both the city and Weitzel submitted evidence concerning the appropriateness of Z-scoring. The city submitted exhibits demonstrating that it has been using Z-scores for almost two decades on "any exam" using "multiple components that differ in type, length, and score range," such as Weitzel's promotional exam. Additionally, the city submitted two reports from S. David Kriska, Ph.D., of Restat Systems, Inc., who reviewed the city's scoring method. Dr. Kriska condoned the use of Z-scoring in light of the different scales for the test components. He recognized that Z-scoring is a legitimate statistical method to place the four tests "on a common scale based on candidate ability," and determined that the Z-scoring formula used by the city in grading Weitzel's exam was a "meaningful and proper application of the test weights." He

also concluded that the scoring procedure was "reasonable" when viewed from the perspective of adding and giving "effect" to seniority points.

{¶7} Included in Weitzel's evidence was a report from Jeffrey Mills, Ph.D., an Associate Professor of Economics at the University of Cincinnati, who arrived at the same conclusion as Dr. Kriska—that the use of Z-scoring was legitimate and appropriate, and that the city's formula gave proper weight to each of the four exam parts. Weitzel maintained, however, that the examination had to be rescored without Z-scoring to comply with the "continuous" scale rule and the announcement concerning the weighting of the four parts.

{¶8} The Commission ruled in favor of the city and issued a written opinion explaining the basis of its decision. Weitzel then appealed the Commission's decision to the Hamilton County Court of Common Pleas under R.C. 2506.01. A magistrate determined that the Commission's decision was not "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of substantial, reliable and probative evidence on the whole record." Weitzel filed objections, but the trial court overruled the objections and adopted the magistrate's decision. This appeal ensued.

{¶9} In his sole assignment of error, Weitzel argues that the trial court erred by affirming the Commission's decision "where the city parties presented no evidence to refute the issues [he] raised, including that the Civil Service Commission illegally violated its own rules by allowing Z-[s]coring."

## II. Judicial Review of the Commission's Decision

{¶10} Weitzel's administrative appeal is governed by the standards of review set forth in R.C. 2506.04, which differ for common pleas and appellate courts. The common pleas court may determine whether the administrative decision was

"unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04. The common pleas court may make factual and legal determinations and provide for the introduction of new or additional evidence, although the standard of review is not de novo. *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 23, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984). This court's authority is limited to reviewing the common pleas court's decision on "questions of law" only, and does not encompass the same power to weigh the evidence. *Id.* at ¶ 25, citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000).

{¶11} Ultimately, the standard of review that we apply in this administrative appeal "is designed to strongly favor affirmance. It permits reversal only when the court of common pleas errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Id.* at ¶ 30.

### III. Analysis

{¶12} Both parties agree that when grading Weitzel's exam for Fire Captain, the city was bound by the "continuous" requirement of Civil Service Rule 10, Section 5, and the preannounced weighting concerning the four parts. Weitzel argued that the city's use of Z-scoring violated these requirements and that the Z-scoring formula arbitrarily diluted the effect of his seniority points. The Commission rejected these arguments based on the evidence presented and denied Weitzel's request to regrade the examination. The trial court affirmed the Commission's decision. We find no error as a matter of law.

{¶13} *Civil Service Rule 10, Section 5's "continuous" requirement.* The relevant part of this civil service rule provides:

> Each part of the examination for each classification shall be graded separately. Scores for each part shall be *continuous* (e.g. 1 to 100) or discrete (e.g. pass/fail). Weighting of the various parts of the examination shall be based upon the results of the job analysis. When supported by the results of the job analysis, parts of the exam may be used to determine eligibility to compete on later parts of the exam, and such parts may either be weighted or not weighted in the computation of the final score. * * * The final grade for each candidate shall be a single score. * * * In promotional examinations, credit for seniority in service shall be added to the examination grade, but no credit for seniority or any other reason shall be added to an examination grade unless the applicant achieves a passing score on the examination without counting such extra credit.

(Emphasis added.) Civil Service Rule 10, Section 5.

{¶14} Weitzel argues that Z-scoring is not a "continuous" scale because it compares candidates based on standard deviations instead of the simple and sequential raw score scale. The Commission determined that "the scores for each part were continuous," and it further suggested that Z-scoring is a continuous scale, even though the scores are derived statistically to standardize the test. We read the trial court's decision as arriving at this same conclusion in interpreting and applying

the "continuous" requirement of Civil Service Rule 10, Section 5, and ultimately affirming the Commission's decision.

{¶15} *The scores for each part were continuous.* The basis of our decision affirming the trial court's decision on this issue is narrower. On its face, the applicable rule requires only that "[s]cores for each part shall be continuous." The rule further recognizes, however, that weighting can occur, and that there will be a "final grade" that will be reported as a "single score." Here, according to the explanation of the scoring provided to the candidates, the city's exhibit No. 4, each candidate received a raw score for "each part" of the exam, which even Weitzel concedes was on a numerical continuum and met the "continuous" requirement. Consistent with this, as the city explained in another exhibit, the "cut score" for the written exam was not based on a Z-score, but instead was based on the raw score. Thus, Weitzel has not demonstrated that the trial court erred as a matter of law in resolving this issue.

{¶16} *Weighting of the four parts of the exam.* The pretest announcement established that the exam would consist of four parts and indicated what percentage of the exam grade each part would be worth, consistent with the following: (1) a written examination, worth 40 percent, (2) an in-basket/essay exercise, worth 10 percent, (3) an emergency situation exercise, worth 20 percent, and (4) an oral board assessment, worth 30 percent. The city's explanation of the exam scoring demonstrates that the final overall test score was determined by adding the weighted scores of the four parts of the examination with the seniority points, and that the raw scores were standardized by converting them to Z-scores as part of the weighting formula.

{¶17} Weitzel argues that the record contains no evidence demonstrating that the proper weighting of the four parts occurred with the use of the Z-score, and therefore the trial court erred by affirming the Commission's decision. But as the trial court noted, Dr. Kriska's reports addressed the weighting issues, and he concluded that the formula used by the city that employed the use of Z-scores resulted in a proper application of the tests weights. Dr. Kriska also concluded that the scores had to be standardized for the weighting to be proper because the components were measured on different scales. Dr. Mills made the same observation in his report that Weitzel offered at the hearing before the Commission. And both Dr. Kriska and Dr. Mills concluded that the specific formula used by the city—which involved using whole number multipliers instead of decimals—was appropriate to give the proper weights to each part of the exam consistent with the pretest announcement. We find that the trial court's decision on the weighting issue was supported by a preponderance of reliable, probative and substantial evidence.

{¶18} *Effect of seniority points.* Weitzel also maintains that the weighting formula the city used was arbitrary, capricious, unreasonable and, therefore, illegal because it diluted the effect of his seniority points compared to the formula that he advanced. But he fails to articulate how this resulted in a violation of the Commission's rules. Nor has he shown that the weighting formula used to grade his exam was arbitrary, capricious or unreasonable, as the record contains evidence showing that the weighting formula used by the city appropriately applied the proper weighting, was consistent with the formula used in the past to grade similar types of exams, and was deemed by Dr. Kriska as "reasonable" and an appropriate method for giving effect to seniority points.

## VI. Conclusion

{¶19} The trial court's decision affirming the Commission was not contrary to law and was supported by a preponderance of reliable, probative and substantial evidence. Accordingly, we overrule the assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**HENDON, P.J.**, and **DeWINE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.