[Cite as *Banker's Choice, L.L.C. v. Zoning Bd. of Appeals & Cincinnati*, 2018-Ohio-3030.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BANKER'S CHOICE, LLC, | : | APPEAL NO. C-170280 |
| | | TRIAL NO. A-1501964 |
| and | : | |
| STOUGH DEVELOPMENT | : | *O P I N I O N.* |
| CORPORATION, | | |
| | : | |
| Plaintiffs-Appellees, | | |
| | : | |
| vs. | | |
| | : | |
| ZONING BOARD OF APPEALS OF | | |
| THE CITY OF CINCINNATI, | : | |
| | | |
| Defendant, | : | |
| | | |
| and | : | |
| | | |
| CITY OF CINCINNATI, | : | |
| | | |
| Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed from is:  Affirmed in Part, Reversed in Part, and  Cause
Remanded

Date of Judgment Entry on Appeal:  July 31, 2018

*Barrett & Weber, C. Francis Barrett* and *Joshua L. Goode,* for Plaintiffs-Appellees,

*Paula Boggs Muething,* City Solicitor, and *Marion E. Haynes, III, Terrance A. Nestor* and *Kevin M. Todd*, for Defendant-Appellant,

*Squire Patton Boggs LLP, Scott A. Kane* and *Larisa M. Vaysman*, for Amicus Curiae Cincinnati Center City Development Corporation.

**CUNNINGHAM, Judge.**

{¶1} Defendant-appellant the city of Cincinnati appeals the trial court's adoption of a magistrate's decision ordering the issuance of a certificate of appropriateness to plaintiffs-appellees Banker's Choice, LLC, and Stough Development Corporation ("Banker's Choice"), to demolish the Davis Furniture Building, a historic structure located at 1119-1123 Main Street. Because the trial court erred as a matter of law in its application of the historic-preservation provisions of the zoning code, we reverse, in part.

{¶2} Banker's Choice, an experienced developer of urban properties in Cincinnati, had purchased and renovated properties on Main Street known as the Hanke Building. The Davis Furniture Building stood immediately across Main Street from the Hanke Building. For more than a decade the Davis Furniture Building had been permitted to deteriorate. As the trial court later found, Banker's Choice purchased the Davis Furniture Building at a sheriff's sale for $125,000 "to alleviate the 'eyesore' * * * the building had become and to protect the economic well-being of their property across the street."

{¶3} After purchasing the Davis Furniture Building, Banker's Choice sought a certificate of appropriateness for demolition from the Historic Conservation Board pursuant to the Cincinnati Zoning Code. *See* Cincinnati Municipal Code 1435-01-C and 1435-09-01. The historic-preservation provisions of the zoning code seek to "maintain and enhance the distinctive character of historic buildings and areas," to "safeguard the heritage of the city," and to "maintain the historic urban fabric of the city." Cincinnati Municipal Code 1435-03(f), 1435-03(g), and 1435-03(l).

{¶4} To avoid the demolition of the Davis Furniture Building and to save it for renovation, three local entities with extensive urban redevelopment experience

stepped forward to purchase the building. The Cincinnati Center City Development Corporation ("3CDC") offered to purchase the property for $125,000 plus costs and expenses up to $200,000. Grandin Properties offered $218,240. And Tender Mercies offered $350,000. Not only were these offers above the Banker's Choice purchase price, the latter two offers were well above the $155,220 assessed value of the property.

{¶5} On December 4, 2014, after holding three hearings and reviewing a voluminous record, the Historic Conservation Board adopted the recommendation of the city's Urban Conservator, and denied Banker's Choice's request. Banker's Choice appealed to the Zoning Board of Appeals of Cincinnati ("the Zoning Board"), which affirmed the Historical Conservation Board's determination. The Zoning Board reviewed the Historical Conservation Board's decision pursuant to Cincinnati Municipal Code 1435-09-2, which guides the determination of when a property owner is entitled to a certificate of appropriateness for demolition. The Zoning Board concluded that the preponderance of the substantial, reliable, and probative evidence confirmed that Banker's Choice had failed to demonstrate that it would be deprived of "all economically viable use[s] of the property * * * without approval" of the certificate of appropriateness for demolition.

{¶6} Pursuant to R.C. 2506.01 and 2506.04, Banker's Choice appealed to the Hamilton County Common Pleas Court. The matter was referred to a magistrate. The parties presented additional evidence before the magistrate. The magistrate vacated the decision of the Zoning Board and the Historic Conservation Board. In reaching his decision, the magistrate found that the Historic Conservation Board's procedures were "deeply flawed and violated [Banker's Choice's] due process rights," that the Davis Furniture Building was not a "historical asset" or a "historic structure"

as those terms are defined in the code, and that the three offers to purchase the building were "illusory" and "not bona fide offers." *See* Cincinnati Municipal Code 1435-01-H and 1435-01-H5. It also held as a matter of law that the standard, identified in Cincinnati Municipal Code 1435-09-2, for determining when the Historic Conservation Board may issue a certificate of appropriateness is "unconstitutional and contrary to Ohio law." The magistrate found that Banker's Choice had proven that it was not economically viable to rehabilitate the property. Accordingly, it ordered the Historical Conservation Board to issue a certificate of appropriateness for demolition to Banker's Choice. The city filed timely objections to the magistrate's decision on each of these matters.

{¶7} The trial court took additional evidence and held extensive hearings on the city's objections before making its own finding that Banker's Choice was not denied due process in the administrative proceedings, that the Davis Furniture Building was "part of a group of buildings that may be deemed to be of an historically significant area and era," and that "at least one and perhaps all three" offers to purchase the property were made "in good faith." The trial court also did not "question or decide the constitutionality of the City ordinances that find the Davis Buildings to be historic assets." Without reaching an "[a]ssessment of fault" for the failure to reach an agreement of sale, the trial court treated the "fact that no one purchased the building" as "substantial evidence that any real or perceived economic hardship * * * was not relieved" by the purchase offers. On this basis, the trial court overruled the objections, adopted the magistrate's decision, and ordered the issuance of a certificate of appropriateness for the building's demolition.

{¶8} The trial court also granted, in part, the city's motion for a preliminary injunction directing Banker's Choice to provide the minimum repairs and

4

maintenance to the building necessary for public safety. But in light of its ruling that the building was to be demolished, the court denied that portion of the city's motion, which would have required additional efforts to restore the building to compliance with other aspects of the city's building code.

{¶9} The city appealed. We permitted 3CDC to appear as amicus curiae.[1]

{¶10} In its first assignment of error, the city contends that the trial court erred in vacating the decision of the Zoning Board and finding that a certificate of appropriateness for the demolition of the Davis Furniture Building should issue. The city's principal argument is that the trial court substituted its judgment for that of the Zoning Board and thus exceeded the scope of its limited and deferential review of the administrative body's actions.

{¶11} But our review of an administrative appeal under R.C. 2506.04 is a limited one focused on the existence of legal error in the trial court. *See Weitzel v. Cincinnati*, 1st Dist. Hamilton No. C-150415, 2016-Ohio-1322, ¶ 10-11; *see also Lohman v. Cincinnati*, 1st Dist. Hamilton No. C-170242, 2018-Ohio-2505, ¶ 23. Under R.C. 2506.04, the common pleas court may determine whether the administrative decision of the Zoning Board was "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." It may make factual and legal determinations and, as here, provide for the introduction of new or additional evidence. *See Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 23, citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984).

---

[1] 3CDC's motion to intervene in the trial court pursuant to Civ.R. 24 had been denied.

{¶12} But the focus of this court's inquiry is not the Zoning Board's ruling. It is the common pleas court's decision. *See Cleveland Clinic* at ¶ 27. Under R.C. 2506.04, this court's authority is limited to reviewing the common pleas court's decision on "questions of law" only, and does not encompass that court's power to weigh the evidence. *Id.* at ¶ 25, citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000); *see also Cincinnati Bengals, Inc. v. Papania*, 92 Ohio App.3d 785, 787, 637 N.E.2d 330 (1st Dist.1993) ("Subsequent appeals to this court are limited to questions of law."). Thus our standard of review "permits reversal only when the court of common pleas errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Cleveland Clinic* at ¶ 30.

{¶13} In its written decision, the trial court correctly identified the law governing its approval or denial of Banker's Choice's application for a certificate of appropriateness. Cincinnati Municipal Code 1435-09-2(b) provides that a certificate of appropriateness should issue if the property owner has demonstrated by credible evidence that it would suffer economic hardship if the certificate were not approved. The trial court further noted that in reaching a determination of whether Banker's Choice had demonstrated an economic hardship, it was required to consider three factors:

> (i)     Will all economically viable use of the property be deprived without approval of a Certificate of Appropriateness;
>
> (ii)     Will the reasonable investment-backed expectations of the property owner be maintained without approval of a Certificate of Appropriateness; and

6

> (iii) Whether the economic hardship was created or exacerbated by the property owner.

Cincinnati Municipal Code 1435-09-2(b).

{¶14} In evaluating these factors for the existence of an economic hardship, the trial court was permitted to consider, among other matters, "[a]ny listing of property for sale or rent, price asked, and offers received, if any, within the previous two years, including testimony and relevant documents * * * ." Cincinnati Municipal Code 1435-09-2(bb).

{¶15} But the trial court's analysis quickly focused not on the three inquiries mandated by Cincinnati Municipal Code 1435-09-2(b), but on the failure of the parties to consummate a sale of the property. The trial court found that the "fact that no one purchased the building" was "substantial evidence that any real or perceived economic hardship * * * was not relieved" by the purchase offers. The court's determination that the "inability to sell" the building constituted evidence of economic hardship truncated its analysis. Its failure to continue on and to determine whether Banker's Choice had been denied all economically viable use of the Davis Furniture Building, whether it could have maintained its reasonable investment-backed expectations, and whether it had created or exacerbated its own economic hardship before approving a certificate of appropriateness was error. *See* Cincinnati Municipal Code 1435-09-2(b); *see also Cleveland Clinic*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, at ¶ 30.

{¶16} Moreover, in applying Cincinnati Municipal Code 1435-09-2(b), the findings necessary to approve a certificate, particularly of the property owner's expectations, must be based upon objective standards, and not upon the subjective perceptions of the property owner. The owner's expectations must be "reasonable"

7

ones based upon the owner's interests in the property sought to be demolished and not solely upon its expectations for nearby properties.

{¶17} When a trial court rules on objections to a magistrate's decision, the court "*shall undertake an independent review* as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." (Emphasis added.) Civ.R. 53(D)(4)(d). When, as here, in exercising its independent review, the trial court's judgment has modified the magistrate's decision and conflicts with it to such a degree by rejecting important factual findings that underpin the magistrate's decision, by employing its new factual findings in its analysis, and by choosing not to reach the magistrate's legal holding regarding constitutional issues, we cannot say that the magistrate's decision and the trial court's judgment can be read together. The first assignment of error is sustained.

{¶18} The city's second assignment of error, in which it asserts that the trial court erred in denying that portion of its motion for a preliminary injunction directing Banker's Choice to effect repairs and improvements to the building to bring it into compliance with the building code, is overruled. The grant or denial of an injunction is consigned to the sound discretion of the trial court. *See Garono v. State*, 37 Ohio St.3d 171, 173, 524 N.E.2d 496 (1988); *see also Faber v. Queen City Terminals, Inc.*, 93 Ohio App.3d 197, 202, 638 N.E.2d 115 (1st Dist.1994).

{¶19} The trial court carefully considered the motion and had granted that part of the city's motion requiring repairs and maintenance to the building necessary for public safety. Since the trial court's decision was well supported by a sound reasoning process, we will not disturb its decision as to the preliminary injunction. *See AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d

157, 161, 553 N.E.2d 597 (1990); *see also Faber* at 202-03. The second assignment of error is overruled.

{¶20} Therefore, the trial court's judgment ordering the issuance of a certificate of appropriateness for demolition is reversed, and the cause is remanded to the trial court for the application of the proper standard consistent with law and this opinion. That portion of the trial court's judgment denying, in part, the city's motion for a preliminary injunction is affirmed.

Judgment affirmed in part, reversed in part, and cause remanded.

**ZAYAS, J.,** concurs.
**Mock, P.J.,** concurs in part and dissents in part.

**Mock, P.J.,** concurring in part and dissenting in part.

{¶21} While I concur with the majority's determination of appellant's second assignment of error, I would reach a different result on the first. The majority concluded that the trial court failed to apply the proper test when making the determination that Banker's Choice had been denied all economically viable use of the Davis Furniture Building, whether it could have maintained its reasonable investment-backed expectations, and whether it had created or exacerbated its own economic hardship before approving a certificate of appropriateness. I disagree.

{¶22} This court's review of the decision of the trial court on administrative appeals is strictly limited. "The standard of review for courts of appeals, however, is limited to questions of law and 'does not include the same extensive power to weigh the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court.' " *Henley*, 90 Ohio St.3d at 147, 735 N.E.2d 433, quoting *Kisil*, 12 Ohio St.3d at 34, 465 N.E.2d 848, fn. 4; *see* R.C. 2506.04.

9

{¶23} I begin with the proposition that the trial court set forth the proper factors to consider. The majority agrees on this point, stating that "the trial court correctly identified the law governing its approval or denial of Banker's Choice's application for a certificate of appropriateness," citing the three factors listed in Cincinnati Municipal Code 1435-09-2(b). Agreeing as we do that the trial court cited the appropriate criteria, we next consider whether the trial court considered this criteria in making its decision.

{¶24} In its analysis, the trial court discussed the inability of Banker's Choice to sell the property as an alternative to seeking the demolition of the buildings. The trial court concluded that "the fact * * * that no one purchased the building is substantial evidence that any real or perceived economic hardship as to Appellants was not relieved." The majority indicates that this statement "truncated" its analysis, and that the trial court did not consider the appropriate factors under Cincinnati Municipal Code 1435-09-02(b). But the trial court did not limit its analysis to this consideration.

{¶25} The trial court also concluded that the decision issued by the magistrate on this point was "appropriate, fair, and [a] just finding." The trial court also concluded that the magistrate "followed the law on the economic hardship aspect" of the analysis. In his decision, the magistrate set forth in detail how Banker's Choice met its burden, by a preponderance of the evidence, to show that the factors set forth in Cincinnati Municipal Code 1435-09-2(b) point to issuance of the certificate of appropriateness. In eight pages of his 25-page decision, the magistrate set forth the testimony that demonstrated that Banker's Choice had proven it was not economically feasible to rehabilitate the building. The analysis, much of which was summarized by the trial court, was sufficient to support the decision below.

10

{¶26} The ability of this court to reverse the decision of a trial court in an administrative appeal is limited to situations where the trial court misapplied the law. *See* R.C. 2506.04. In this case, the trial court cited the proper factors to consider when deciding whether the issuance of a certificate of appropriateness is warranted. The trial court cited the proper standard of review that it is to apply when both considering the decision of the administrative agency, and the decision of its magistrate. The trial court based its decision in part on its own analysis and in part on its agreement with the substantial analysis already conducted by the magistrate. When read together, the magistrate's analysis and the trial court's own review of the record render the trial court's judgment sufficiently complete to permit this court to affirm under the limited legal-error analysis provided by R.C. 2506.04. I would overrule the first assignment of error.

Please note:

The court has recorded its own entry on the date of the release of this opinion.