[Cite as *Banker's Choice, L.L.C. v. Cincinnati Zoning Bd. of Appeals*, 2021-Ohio-1206.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BANKER'S CHOICE, LLC, | : | APPEAL NO. C-200117 |
| and | : | TRIAL NO. A-1501964 |
| STOUGH DEVELOPMENT CORPORATION, | : | *O P I N I O N.* |
| | : | |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| ZONING BOARD OF APPEALS OF THE CITY OF CINCINNATI, | : | |
| Defendant, | : | |
| and | : | |
| CITY OF CINCINNATI, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  April 9, 2021

*Barrett & Weber LPA*, *C. Francis Barrett* and *Joshua L. Goode*, for Plaintiffs-Appellees,

*Andrew W. Garth*, Interim City Solicitor, *Marion E. Haynes, III*, and *Kevin M. Tidd*, Assistant City Solicitors, for Defendant-Appellant.

**MYERS, Presiding Judge.**

{¶1} Defendant-appellant the city of Cincinnati appeals for the third time the trial court's adoption of a magistrate's decision ordering the issuance of a certificate of appropriateness to plaintiffs-appellees, Banker's Choice, LLC, and Stough Development Corporation ("Banker's Choice"), to demolish the Davis Furniture Building,[1] a structure designated as historic in downtown Cincinnati. Because the trial court considered the required factors in Cincinnati Municipal Code 1435-09-2(b), and because its determination that Banker's Choice had demonstrated an economic hardship was supported by a preponderance of the evidence, we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶2} In 2013, Banker's Choice, a Cincinnati developer of urban properties, bought the Davis Furniture Building at a sheriff's sale for $125,000 "to alleviate the 'eyesore' * * * the building had become and to protect the economic well-being of their property across the street." *Banker's Choice, LLC, v. Zoning Bd. of Appeals of City of Cincinnati*, 2018-Ohio-3030, 106 N.E.3d 1271, ¶ 2 (1st Dist.) ("*Banker's Choice I*"). After acquiring and evaluating the property, Banker's Choice sought a certificate of appropriateness for demolition from the Historic Conservation Board pursuant to the Cincinnati Zoning Code. *See* Cincinnati Municipal Code 1435-01-C and 1435-09-01.

{¶3} In 2014, the Historic Conservation Board denied the request by Banker's Choice for a certificate of appropriateness for demolition of the Davis

---

[1] We refer to the "building" in the singular, as we did in our prior decisions. The property comprises two buildings located at 1119 and 1123 Main Street.

Furniture Building. It found that three local entities had presented legitimate purchase offers, each of which, if consummated, would cover and exceed Banker's Choice's purchase price and costs. It determined that Banker's Choice had failed to show that all economically viable use of the property would be deprived without demolition. Banker's Choice appealed, and in 2015, the Zoning Board of Appeals ("the Zoning Board") affirmed the denial of the demolition request. Banker's Choice appealed to the Hamilton County Court of Common Pleas.

{¶4} After taking additional evidence, a magistrate of the common pleas court determined that the Historic Conservation Board violated Banker's Choice's due-process rights, that the Davis Furniture Building was not a "historical asset" or a "historic structure" as those terms are defined in the code, and that the three offers to purchase the building were "illusory" and "not bona fide offers." The magistrate also held as a matter of law that the standard for determining when the Historic Conservation Board may issue a certificate of appropriateness, identified in Cincinnati Municipal Code 1435-09-2, was unconstitutional. The magistrate found that Banker's Choice had proven that it was not economically viable to rehabilitate the property and ordered the Historic Conservation Board to issue a certificate of appropriateness for demolition to Banker's Choice. The city filed objections.

{¶5} In 2017, the trial court overruled the objections, adopted the magistrate's decision, and ordered the issuance of a certificate of appropriateness for the building's demolition. In addition, the court determined that Banker's Choice was not denied due process, but the court did not decide the constitutionality of the relevant city ordinance. The court treated the "fact that no one purchased the building" as "substantial evidence that any real or perceived economic hardship * * *

was not relieved" by the purchase offers. In light of its ruling that the building could be demolished, the court denied the city's motion for a preliminary injunction directing Banker's Choice to restore the building to comply with the city's building code.

*Banker's Choice I*

{¶6} In the city's first appeal, we noted that the trial court had correctly identified the law governing its approval or denial of Banker's Choice's application for a certificate of appropriateness for demolition. *Banker's Choice I* at ¶ 13. Cincinnati Municipal Code 1435-09-2(b) provides that a certificate of appropriateness should issue if the property owner has demonstrated by credible evidence that it would suffer economic hardship if the certificate were not approved. *Id.* In reaching a determination of whether Banker's Choice had demonstrated an economic hardship, the trial court was required to consider three factors:

> (i)    Will all economically viable use of the property be deprived without approval of a Certificate of Appropriateness;
>
> (ii)    Will the reasonable investment-backed expectations of the property owner be maintained without approval of a Certificate of Appropriateness; and
>
> (iii)    Whether the economic hardship was created or exacerbated by the property owner.

*Id.*, citing Cincinnati Municipal Code 1435-09-2(b).

{¶7} We held that the trial court did not evaluate all three factors of the economic hardship test prior to ordering the issuance of a certificate of appropriateness for demolition. *Id.* at ¶ 15. We held that the trial court's conflicting

4

findings made it impossible for this court to "read together" the magistrate's decision and the trial court's judgment to determine whether the trial court correctly applied the law. *Id.* at ¶ 17. We remanded the matter to the trial court for the application of "the proper standard consistent with law and this opinion." *Id.* at ¶ 20. We affirmed the denial of the city's motion for a preliminary injunction.

{¶8} On remand, however:

> The trial court instead undertook to rerule on the [city's] objections to the magistrate's decision. In a brief subsequent entry, the trial court overruled all of the objections to the magistrate's decision and simply adopted the magistrate's decision in its entirety—including all of the factual and legal findings, some of which were previously rejected.

*Banker's Choice, LLC, v. Zoning Board of Appeals of the City of Cincinnati*, 1st Dist. Hamilton No. C-180578, 2019-Ohio-4854, ¶ 11 ("*Banker's Choice II*"). The city appealed again.

### *Banker's Choice II*

{¶9} In the city's second appeal, we held that the trial court erred by failing to follow the mandate of this court on remand, and in doing so violated the law-of-the-case doctrine. *Banker's Choice II* at ¶ 18. We noted that the only basis for remand had been "the issue of whether Banker's Choice demonstrated by credible evidence that it will suffer economic hardship—under the three-factor 'economic hardship' test—if the certificate of appropriateness for demolition of the Davis Furniture Building is not approved." *Id.* at ¶ 15. We said:

> However, rather than heed this instruction to address a limited issue on remand, the trial court chose to adopt the magistrate's decision in

5

its entirety. Effectively, the trial court vacated its previous judgment, including all of the factual and legal findings that differed from the magistrate's decision which had been upheld in *Banker's Choice I.* The trial court's judgment now holds, inter alia, that the [city] violated Banker's Choice's due-process rights and that part of the Cincinnati zoning code is unconstitutional.

*Id.*

{¶10} We reversed the judgment of the trial court, remanded the matter, and ordered the trial court do the following:

On remand, the trial court must apply the three-factor "economic hardship" test under Cincinnati Municipal Code 1435-09-2(b) to its factual findings and decide whether Banker's Choice demonstrated by credible evidence that it will suffer economic hardship if the certificate of appropriateness for demolition of the Davis Furniture Building is not approved.

*Id.* at ¶ 20.

*The Trial Court's Judgment*

{¶11} On remand, the trial court applied the three-factor economic hardship test to its factual findings and concluded that Banker's Choice demonstrated that it would suffer economic hardship if the certificate of appropriateness for demolition was not approved. The court adopted the magistrate's decision ordering the issuance of a certificate of appropriateness to Banker's Choice to demolish the building. The city now appeals.

6

*The City's Third Appeal*

**{¶12}** In a single assignment of error, the city argues that the trial court's determination that Banker's Choice demonstrated it will suffer economic hardship is not supported by a preponderance of the substantial, reliable, and probative evidence on the whole record as a matter of law.

**{¶13}** In administrative appeals under R.C. 2506.04, common pleas courts and courts of appeals apply differing standards of review. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). The common pleas court is required to weigh the evidence in "the whole record" and to determine whether the administrative order or decision at issue is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." R.C. 2506.04; *Henley* at 147.

**{¶14}** An appeal to the court of appeals is more limited in scope than an appeal to the common pleas court and is more deferential to the lower court's decision. *Shelly Materials, Inc. v. City of Streetsboro Planning and Zoning Comm.*, 158 Ohio St.3d 476, 2019-Ohio-4499, 145 N.E.3d 246, ¶ 17, citing *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984); *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 25. Under R.C. 2506.04, the appellate court's authority is limited to reviewing the common pleas court's decision on "questions of law," and does not encompass the common pleas court's power to weigh the evidence. *Banker's Choice I* at ¶ 12, citing *Cleveland Clinic* at ¶ 25.

> Apart from deciding purely legal issues, the court of appeals can
> determine whether the court of common pleas abused its discretion,

which in this context means reviewing whether the lower court abused
its discretion in deciding that an administrative order was or was not
supported by reliable, probative, and substantial evidence.

*Shelly Materials* at ¶ 17.  Under R.C. 2506.04, a court of appeals must affirm unless it finds, as a matter of law, that the decision of the common pleas court is not supported by the required evidence.  *Cleveland Clinic* at ¶ 27-28.

{¶15}  Banker's Choice contends that the city should not be allowed to argue that the trial court's decision is unsupported by the evidence because the city did not raise this assignment of error in either of its prior appeals.  However, in the city's first appeal, it challenged the trial court's finding that a certificate of appropriateness for demolition should issue.  *Banker's Choice I* at ¶ 10.  But because the trial court did not properly analyze the question in the first instance or on our initial remand, we did not reach the issue in either of the prior appeals.

{¶16}  Banker's Choice also argues that under the doctrine of the law of the case, the city should not be allowed to argue in this appeal that the trial court impermissibly substituted its judgment for that of the Zoning Board of Appeals. Under the law-of-the-case doctrine, "legal questions resolved by a reviewing court in a prior appeal remain the law of that case for any subsequent proceedings at both the trial and appellate levels."  *Farmers State Bank v. Sponaugle*, 157 Ohio St.3d 151, 2019-Ohio-2518, 133 N.E.3d 470, ¶ 22.  The law-of-the-case doctrine " 'comes into play only with respect to issues previously determined.' "  *Giancola v. Azem*, 153 Ohio St.3d 594, 2018-Ohio-1694, 109 N.E.3d 1194, ¶ 16, quoting *Quern v. Jordan*, 440 U.S. 332, 347, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), fn. 18.

{¶17}  In *Banker's Choice I*, we stated that the city's principal argument was

8

that the trial court substituted its judgment for that of the Zoning Board of Appeals. *Banker's Choice I* at ¶ 10. In our analysis of the city's argument, we explained the limited nature of an appellate court's review under R.C. 2506.04, compared to that of a common pleas court under the statute. *Id.* at ¶ 11-12. Our articulation of our standard of review did not resolve a legal question, however; it simply set forth the standard that we would use to resolve the legal question in the case.

### *Trial Court's Application of the Three-Factor Test*

{¶18} In our remand of the case, we instructed the trial court to apply the three-factor test of Cincinnati Municipal Code 1435-09-2(b) and determine whether under that test Banker's Choice had established economic hardship. The trial court did so, but the city claims the court's analysis was unsupported by reliable evidence.

{¶19} The city argues that the trial court failed to explain its rationale or conduct a meaningful analysis in its application of the three factors of the economic hardship test. But with respect to a trial court's failure to explain its rationale or failure to identify supporting evidence in its decision, the Supreme Court of Ohio has held: "[w]hile these may or may not be flaws in the trial court's opinion, they are not fatal." *Cleveland Clinic*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, at ¶ 28. An appellate court has a duty to affirm unless it finds, as a matter of law, that the trial court's decision is unsupported by substantial, reliable, and probative evidence. *Id.*

### *1. Denial of All Economically Viable Use*

{¶20} The city argues that the trial court's determination under the first factor, Cincinnati Municipal Code 1435-09-2(b)(i)—that the property will be deprived of all economically viable use without approval of a certificate of

appropriateness—is not supported by the evidence.

{¶21} In analyzing what it means to be deprived of all economically viable use, we find zoning cases instructive. Courts consider the question of deprivation of a property's economic value in challenges to zoning regulations under the Fifth Amendment. In determining whether a regulation has deprived a property owner of all economic value, a court's concern is "not whether [a] property is capable of being used, but whether it is capable of being used in an 'economically beneficial or productive' manner." *State ex rel. AWMS Water Solutions, L.L.C. v. Mertz*, Slip Opinion No. 2020-Ohio-5482, ¶ 47, quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 1017, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). A regulation denies an owner all economically viable use of the owner's land if it restricts the use of the land so as to " 'render it valueless, the permitted uses are not economically feasible, or the regulation permits only uses which are highly improbable or practically impossible under the circumstances.' " *State ex rel. Ridge Club v. Amberley Village*, 1st Dist. Hamilton No. C-070012, 2007-Ohio-6089, ¶ 13, quoting *Valley Auto Lease v. Auburn Twp. Bd. of Zoning Appeals*, 38 Ohio St.3d 184, 186, 527 N.E.2d 825 (1988).

{¶22} The city argues that the trial court was required to consider whether Banker's Choice could have realized a profit had it accepted one of the offers it received to purchase the building. However, an owner's ability to sell an affected property does not constitute an economically beneficial use; "[t]ypical economic uses enable a landowner to derive benefits from land ownership rather than requiring a landowner to sell the affected parcel." *Mertz* at ¶ 48, quoting *Lost Tree Village Corp. v. United States*, 787 F.3d 1111, 1117 (Fed.Cir.2015).

10

{¶23} In its discussion of economically viable use of the property, the trial court noted that the building was "crumbling," "dangerous," and "not in good shape whatsoever," and that even the city had referred to it as "vacant, unsafe, unsanitary and deteriorating." The court noted the building's "major structure and damage issues," and that it had, earlier in the proceedings, ordered Banker's Choice to undertake certain safety repairs to alleviate a clear and present danger to first responders.

{¶24} The trial court stated, "To make the building economically viable for anyone would be very difficult and expensive." The court stated that it "found and specifically stated in prior decisions that Banker's Choice presented credible evidence from experts in the field of property restoration and the financial aspect of property restoration that the Davis Furniture Building would be economically not viable."

{¶25} In its 2017 decision, the court found that three entities, two of which were nonprofit organizations, "all made 'offers,' " but "[n]o contract to purchase the property was ever consummated." The court also found that Banker's Choice had marketed the property "in various ways including the hiring of a professional and experienced commercial real estate broker, i.e., David Cawdrey." The court noted Cawdrey's testimony that he vigorously marketed the buildings using various marketing and commercial real estate techniques. And, although Banker's Choice was not required to do so, the court concluded that Banker's Choice had "engaged in legal and appropriate efforts to sell the property."

{¶26} In the trial court's 2017 decision, it specifically found that the $3.34 million estimate for rehabilitation costs submitted by HGC Construction, which it found to be "a reputable construction company with much experience in restoring

11

buildings in the [Over-the-Rhine neighborhood]," along with Banker's Choice's investment-return calculations, "indicates restoration creates an economical hardship." The court noted that William Stough, vice president of the Stough Group, testified that it was not economically feasible to restore the building. The court noted that Michael Stough, the CEO of Stough Development Corporation, testified that it was not economically feasible to restore the building, that the cost and financing put the monthly debt service far above any potential rental income, and that he was aware of no scenario where a net operating income could be achieved.

{¶27} Following our review of the record, we hold that there was evidence, if believed, to support the trial court's determination that the property would be deprived of all economically viable use without approval of a certificate of appropriateness.

{¶28} Michael Stough provided the Historic Conservation Board and the Urban Conservator, Larry Harris, an estimate for construction costs of approximately $2.5 million. As the Urban Conservator, Harris's duty is to administer the city's historic preservation regulations and to review the appropriateness of demolitions of properties located within historic districts. *See* Cincinnati Municipal Code 1435-05-2. Because Harris believed the estimate's numbers were inflated, Stough hired HGC Construction to do an independent cost assessment, as Stough explained, "to develop a cost for putting the building back into service." Harris admitted that HGC Construction was one of the most reputable contractors in Cincinnati and that its estimate of $3.34 million, though substantially greater than that provided by Stough, was "credible."

{¶29} Michael Paul, a registered architect and chief operating officer for

Stough Development Corporation, testified that major structural components of the building needed to be rectified before they could move forward with any type of project. Paul generated a pro forma and determined that "the building was not performing under most any standard at that point in time. Financially, it didn't make sense." Paul testified that he performed "a life cycle analysis on what the building would cost versus what the building is capable of generating in terms of revenue." According to Paul, his market value analysis indicated that a "return on investment wasn't there. It has actually a negative cash flow over it without some type of subsidies that this project wasn't viable." With respect to the potential return on investment, his analysis reflected "that the property is nonperforming" and that, under no scenario, would it realize a reasonable rate of return on the investment.

{¶30} Paul hired structural engineers to review the building for structural stability. Richard Meyer of the Shell & Meyer firm in Dayton, Ohio, performed an inspection of the building and prepared a report detailing "serious structural issues some of which [he] consider[ed] to be dangerous." Meyer concluded that "[t]he conditions observed are structurally unsafe and will require extensive reinforcing and reconstruction." Michael Frank of GOP Limited performed an inspection of the property and prepared a report detailing the condition of the building and problems with potential reuse of the building. Frank testified that it would be easier and more cost effective to "start over" and build a new building because so much of the existing building would have to be modified.

{¶31} The trial court was in the best position to evaluate the evidence and assess the credibility of the witnesses. *See Ridge Club*, 1st Dist. Hamilton No. C-070012, 2007-Ohio-6089, at ¶ 37. The court recognized and considered the

countervailing evidence, including the offers to purchase. The court was free to accept the testimony of the Stoughs and of Michael Paul, and the evidence from the outside experts. The fact that the Stoughs and Paul were "insiders" goes to the weight and credibility of their testimony. That testimony, along with the other evidence, if believed, supported the finding that all economically viable use of the property would be deprived without a certificate of appropriateness.

### 2. Reasonable Investment-Backed Expectations

{¶32} In considering the second factor of the economic hardship test in Cincinnati Municipal Code 1435-09-2(b)(ii), the trial court found that Banker's Choice's reasonable investment-backed expectations would not be maintained without approval of a certificate of appropriateness. Specifically, the court found that Banker's Choice "bought the building with restoration and financial investment among other things in mind." The court found, however, that due to the costliness of restoration, those "reasonable investment-backed expectations could not be made to come to fruition" without a certificate of appropriateness for demolition.

{¶33} Here, the trial court took into consideration that Banker's Choice bought the building for $125,000 at a sheriff's sale and that the building was designated as a historic structure. The court noted that the Cincinnati Municipal Code allows for a certificate of appropriateness for demolition, even for a building that is a historic structure, so long as certain conditions in the code are met. The court noted the expertise of Banker's Choice as an experienced developer of urban properties in the Over-the-Rhine historic district in Cincinnati. In its 2017 decision, the court found that Banker's Choice has "a history of contributing not subtracting from the viability and history of Over-the[-]Rhine." The court found that restoration

of the building "would be extremely costly for anyone to have it sustain economic viability if it could in fact ever be capable of economic viability."

{¶34} As a developer of properties in the area, Banker's Choice was aware of the historic-preservation provisions of the zoning code at the time it purchased the building. It was the expectation of Banker's Choice to restore the property if economically feasible, and if not, to obtain a certificate of appropriateness for demolition. The record supports the trial court's determination that, due to the economic infeasibility of restoration, Banker's Choice's reasonable investment-backed expectations would not be maintained without approval of a certificate of appropriateness for demolition.

*3. Was the Hardship Created or Exacerbated by the Property Owner*

{¶35} In applying the third factor set forth in Cincinnati Municipal Code 1435-09-2(b)(iii) to its factual findings, the trial court determined that Banker's Choice neither created nor exacerbated the economic hardship that it would suffer if the certificate of appropriateness was not approved. The court found that even before Banker's Choice bought the building, it had been deteriorating and unsafe and that the city had had problems with the building. The court rejected any argument that Banker's Choice exacerbated its economic hardship by "its tactics regarding the offers made to buy the building, marketing techniques, etc." The court found that the record was devoid of credible evidence showing that Banker's Choice did anything to exacerbate the economic hardship. The trial court's determination that Banker's Choice neither created nor exacerbated the economic hardship that it would suffer is supported by the record.

*Conclusion*

**{¶36}** The trial court properly examined and applied each of the three mandatory factors of the economic hardship test in Cincinnati Municipal Code 1435-09-2(b) to its factual findings, as required by our remand in *Banker's Choice II*, and concluded that Banker's Choice demonstrated that it would suffer economic hardship if the certificate of appropriateness was not approved. Because the trial court's determination was supported by a preponderance of the evidence, we hold that the court did not abuse its discretion in vacating the Zoning Board's decision denying a certificate of appropriateness. Therefore, we overrule the assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.